**Fred RATLIFF, Appellant,**

v.

**The EMPLOYERS' LIABILITY ASSURANCE CORPORATION, LTD.,**
**Appellee.**

Court of Appeals of Kentucky.

Oct. 25, 1974.

---

---

Arthur L. Brooke, Patrick H. Molloy, Lexington, for appellant.

Leslie W. Morris, Stoll, Keenon & Park, Lexington, for appellee.

PER CURIAM.

Fred V. Ratliff obtained a judgment against Foundation Hospital, Inc., in the amount of $9,682.60, as damages for personal injuries sustained by Ratliff through negligence of members of the staff of the hospital while he was a patient in the hospital. The hospital having no property to satisfy the judgment, Ratliff brought the instant action against the Employer's Liability Assurance Corporation, Ltd., which had issued a general liability insurance policy to the hospital. The insurance company defended on the ground that the accident in question was not covered by the policy by reason of a clause excluding "Malpractice and Professional Services." The trial court so held, and entered judgment dismissing the complaint, from which judgment Ratliff appeals.

The trial judge set forth the grounds of his decision in a written opinion. We concur fully in his opinion and therefore adopt it as the opinion of this court. We quote:

"This action is pending before the Court upon the motion for summary judgment of each party. Neither party contends that there is any genuine issue as to any material facts.

"The Defendant, The Employers Liability Assurance Corporation, Limited, issued a general liability insurance policy to the Foundation Hospital, Inc. This policy contained an endorsement styled, 'Exclusion of Malpractice and Professional Services.' This endorsement provided:

'It is agreed that as respects any classification stated above or designated in the policy as subject to this endorsement, the policy does not apply to injury, sickness, disease, death or destruction due to

1. The rendering of or failure to render

(a) medical, surgical, dental, x-ray or nursing service or treatment, or the furnishing of food or beverages in connection therewith;

(b) any service or treatment conducive to health or of a professional nature; or

\* \* \* \* \* \*

2. The furnishing or dispensing of drugs or medical, dental, or surgical supplies or appliances; or \* \* \*'

"Plaintiff, Fred V. Ratliff, received injuries while a patient at the Foundation Hospital. In Civil Action No. 21878, Ratliff brought suit in this Court against the Foundation Hospital for the injuries in question. Upon a jury verdict for Ratliff, the Court entered judgment for Ratliff

against the Foundation Hospital for $9,682.60. Execution was issued, and upon a return of 'no property found,' Ratliff instituted this action against Employers on the policy in question. Employers contends that Ratliff's injuries fall within the malpractice and professional services exclusion. Employers also contends that it is also relieved of liability because its insured, Foundation Hospital, Inc., failed to give notice of the accident as required by Condition 9 of the policy.

"For the purposes of this motion, the Court will accept as correct the statement of facts contained in Ratliff's brief:

'The Plaintiff, Fred Ratliff, in December, 1966, suffered from alcoholism. The Defendant's insured was a hospital owned by local physicians specializing in psychiatry and operated by them for the treatment of mental patients and alcoholics. The Hospital was a private institution and looked to its patients for remuneration.

'During the late fall of 1966, the Plaintiff's father died. He became emotionally distressed, and resorted to alcohol. His condition became acute and he was admitted periodically to the Hospital. When the Plaintiff admitted himself in late December, he was in a physically weakened and debilitated condition suffering from severe alcoholism.

'On December 22, 1966 the Plaintiff was assigned to a two-bed room and he was placed on a schedule of medication designed to withdraw him from alcohol with a minimum of emotional strain. The drugs which were administered by the nurses and staff of the Hospital as prescribed by Dr. Knepper included paraldehyde, seconal, surbex, sparine and dilantin.

'The Plaintiff testified that early Christmas morning he woke up in a nervous and anxious condition. He walked to the nurse's station near his room and asked to be assisted to the men's restroom. He testified that he felt as if he was about to suffer an alcoholic seizure, a feeling he had known before. After Mrs. Yocum, as nurse at the Hospital, assisted him to the restroom door, she then walked him back to the nurse's station. There he was administered a reddish brown liquid from a·medicine glass. The Plaintiff then began his walk back to his room but without being assisted by anyone. The Plaintiff could not remember the accident which caused his injuries, but next recalls sitting on the floor of his room with a broken leg.

'The Plaintiff was moved to St. Joseph's Hospital where his injuries were tended by Dr. Phillips. He was hospitalized twenty-one days and operated on twice before the fractured left leg was set. He now wears an elevated shoe which compensates for his left leg being one inch shorter than his right.

'Milton Nichols, a registered pharmacist, testified for the Plaintiff concerning the nature of the drugs given him. According to the evidence, the Plaintiff while at Nurse Yocum's station, was given 4–CC of seconal orally just minutes before his leg was broken. Nichols stated that seconal, when taken orally, was a rapid-acting sleep-inducing sedative. In response to questions about the time or speed of the drug on the patient and in particular a patient in the Plaintiff's condition, he concluded that seconal would affect a patient not sooner than 15–20 minutes after taken. The seconal administered just prior to the accident had not had sufficient time to affect the Plaintiff's actions.

'As shown by the allegations of the Complaint in Action No. 21818, the proof offered by Plaintiff, and the Interrogatories submitted to the jury at the trial, it was the theory of the Plaintiff that the injuries sustained by him were the direct result of the Defendant's insured's failure to exercise ordinary care and attention for the Plaintiff's safety at

the time of his injury. The Plaintiff offered proof that he was unable, because of his condition, to care for himself at the time in question, that the Hospital personnel were aware of his condition but failed to give proper attention for his safety, witnessed by the fact he became injured. The precise manner in which Plaintiff was injured was not known to him or otherwise shown by the evidence.'

"In answer to an interrogatory propounded in Action No. 21878, Ratliff made the following statement:

'I claim that the defendant was negligent in failing to provide proper care and attention for my safety in undertaking to treat me for an alcoholic and debilitated condition and administering drugs to me which caused me to be unable to properly care for my own safety and then failing to provide sufficient supervison and attention for me so as to prevent my fall and injury.'

"In answer to interrogatories, the jury in Action No. 21878 found that Ratliff was mentally or physically incapable of caring for his own safety, and that the hospital through its agents and employees knew, or by the exercise of ordinary care should have known that he was incapable of caring for his own safety. The jury further found that the hospital failed to exercise ordinary care for Ratliff's safety and such failure was a cause of his injuries. In the instructions, ordinary care was defined as that degree of care exercised by ordinarily prudent persons 'engaged in caring for and treating persons in the plaintiff's condition' under like or similar circumstances.

"Both parties have submitted excellent briefs containing a comprehensive citation of cases. The apparently simple task of determining whether Ratliff's injuries fall within the malpractice and professional services exclusion immediately becomes complex when one considers the cases which have reached exactly opposite results upon similar factual situations.

There are no Kentucky cases in point. In many of the cases holding that the exclusionary clause was inapplicable, there has been a finding that no professional services were involved. In Gulf Insurance Company v. Tilley, 280 F.Supp. 60 (N.D. Ind.1967), a housewife performing services as a babysitter was held not to be rendering profession services within the meaning of the policy. A child was injured when she pulled a pot of hot coffee over. In Maryland Casualty Co. v. Crazy Water Co., (Tex.Civ.App.1942) 160 S.W.2d 102, the plaintiff was a guest of the Crazy Hotel at the time. In connection with its general hotel business, the hotel maintained a bath house. Plaintiff was injured while taking a bath pursuant to a doctor's prescription and while being attended by a hotel employee known as a 'tubber'. The normal duties of a tubber were to assist a bather in taking a bath, running the water, testing the temperature and assisting the bather into and out of the tub. The Texas Court held that a tubber who was paid $1.60 a day was not engaged in rendering professional services and, therefore, any negligence of the tubber did not fall within the exclusionary clause. In D'Antoni v. Sara Mayo Hospital, La., 144 [So.] 2d 643, the plaintiff was a sixty-two-year-old woman suffering from epileptic seizures who was under sedation while at the hospital. Her physician gave orders that side rails be maintained on each side of the patient's bed. After administering oxygen to the patient, a nurse failed to raise a bed rail on one side of the bed. The plaintiff was injured when she fell from the bed. The Louisiana Court held that the malpractice and professional services exclusion did not apply. While the initial decision to attach the side rails may have involved professional judgment, once the physician had issued the order the professional aspect of the matter was complete. The placing and maintaining of the side rails could have been performed by anyone, without any professional training.

"In Keepes v. The Doctors Convalescent Center, Inc., 89 Ill.App.2nd 36, 231 N.E.

∩

2nd 274, plaintiff was an eighteen-month-old mentally retarded child who was being kept by the Doctors Convalescent Center. The child was being bathed by a 'nurses aid' who left him unattended for a few minutes. The child had somehow gotten against a hot radiator where he suffered burns. The Illinois Court held that the attendant's negligence in leaving the child unattended did not come within the malpractice and professional services exclusion. The Court pointed out that the attendant was not a nurse, had received no medical or nursing training and did not perform any nursing services. The attendant's duties were restricted to cleaning rooms, changing bedding and helping to feed and bathe the children. The Court pointed out that the child was being prepared for a bath the same as if he had been at home.

"In each of the cases referred to above and relied on by Ratliff, the negligent act did not involve any professional training or experience. The exercise of professional judgment was not required in any case. Two other cases holding that the malpractice and professional services exclusion did not apply must also be examined. In Norways Sanatorium v. Hartford Accident & Indemnity Co., 112 Ind.App. 241, 40 [41] N.E.2d 823, a mental patient jumped or fell from an unguarded second-floor window of the sanitorium building. The exclusionary clause in this case differs materially from that present in the policy insuring the Foundation Hospital. The Indiana Court held that the language of the exclusionary clause covered only the situation in which a physician, nurse or attendant was provided, but acted negligently. The Court held that it did not cover the failure to provide a physician, nurse or attendant. In New Amsterdam Casualty Company v. Knowles, Fla., 95 So.2nd 413, the plaintiff was a mental and physical incompetent who was also a paralytic. While receiving nursing care in a convalescent home, the plaintiff was injured when he fell from his bed. The side rails on the bed had been left down. The Florida Court held that the general liability policy issued to the convalescent home covered the accident. The Court held that the insurance company knew it was insuring a convalescent home and could not escape liability by a malpractice and professional services exclusion. This case cannot be reconciled with cases from other jurisdictions involving similar facts.

"In contrast to the Knowles opinion, is the opinion of the New York Supreme Court, Appellate Division, in Brockbank v. Travelers Insurance Company, 207 N.Y.S. 2nd 723, 12 A.D.2nd 691 (1960). In summary fashion, the New York Court held that injuries sustained by a patient in a convalescent home as a result of the failure to place side rails on the patient's bed came within the malpractice and professional services exclusion. A more detailed discussion of the problem was made by the Court in Demandre v. Liberty Mutual Insurance Company, 264 F.2d 70 (5th Circuit 1969). In that case, the plaintiff asserted that she was injured when a hospital had negligently failed to place side rails on her hospital bed while she was under extensive sedation. After holding that the case could not be disposed of by summary judgment on the basis of the complaint alone, the Court pointed out that the facts could determine whether the case fell within the malpractice and professional services exclusion. The Court distinguished a situation in which a physician or nurse had ordered the use of side rails, but an orderly or janitor had failed to carry out the instructions, from a situation in which a nurse had determined the side rails were not needed.

"In Multnomah County v. Oregon Automobile Insurance Company, Or., 470 P.2nd 147, the plaintiff was a diabetic jail inmate who sustained injuries as a result of a failure of a medical technician at the jail to give him insulin when requested and required. The Oregon Supreme Court held that the injuries fell within the exclusion of any injury due to the 'failure to render

any professional service,' based upon the transcript in the action by the plaintiff in which he secured a judgment against the head jailer. The Court held that professional competence was required to recognize the plaintiff's need for the insulin injection. Hence, the exclusion applied since the plaintiff's judgment was based upon a failure to render professional service. In Tankersley v. Insurance Company of North America, La., 216 So.2nd 333, the defendant hospital served as a home for elderly ladies. The complaint alleged that nurses at the hospital were notified of the worsening condition of an elderly patient but that the nurses took no steps to secure a doctor. As a result, it was alleged, the patient died. The Louisiana Court held that the action fell within the malpractice and professional services exclusion. The Louisiana Court pointed out that the decision whether or not to make a telephone call for a doctor required the nurses to exercise their expert judgment.

"The court has also considered cases in which a patient has been injured as a result of defective equipment while being treated. Antles v. Aetna Casualty and Surety Company [221 Cal.App.2d 438], 34 Cal.Rptr. 508 (defective heat lamp bracket); Harris v. Fireman's Fund Indemnity Co., [42 Wash.2d 655], 257 P.2nd 221 (treatment lamp collapsed). In each case the Court held that the injury fell within the malpractice and professional services exclusion, but these cases do not apply to this situation as Ratliff was not being treated at the moment of his injury.

"The Court has also considered cases in which the issue was whether the injury fell within the policy covering malpractice.

"As any ambiguity in an insurance policy is construed against the insurance company, there may be an area in which a malpractice policy and a general liability policy with a malpractice and professional services exclusion overlap. Therefore, cases construing malpractice policies are not directly in point with respect to a malpractice and professional services exclusion.

Nevertheless, it is apparent that the two policies are intended to insure different risks, even if there is a small area in which the policies overlap. Therefore, the cases construing coverage of a malpractice policy do have some bearing on the meaning of the malpractice and professional services exclusion of a general liability policy.

"In Marx v. Hartford Accident and Indemnity Co., 183 Neb. 12, 157 N.W.2nd 970 [870], the Court held that damages resulting from an employee's filling a sterilization container with benzine did not fall within the malpractice policy since it did not involve a professional act or service. The Court stated that filling the sterilizer with water was no more a professional service then the routine activity of a housewife in sterilizing baby bottles or canning jars. On the other hand, other courts have extended the coverage of malpractice policies to include acts not normally considered to require professional services. American Policyholders Ins. Co. v. Michota, 156 Ohio St. 578, 103 N.E.2nd 817; Burns v. American Casualty Co., Cal.App. [127 Cal.App.2d 198], 273 P.2nd 605.

"In the present case, the negligence of the Foundation Hospital is based upon the failure of the nurses to recognize Ratliff's debilitated condition as a result of acute alcoholism and the administration of drugs by the hospital. Determining whether Ratliff was capable of returning safely from the nurses' station to his bed required the nurses to exercise their expert professional ability. Any negligence on the part of the hospital in deciding that Ratliff could return to bed unassisted was clearly a failure to render professional care. Having in mind the cases from other jurisdictions, the Court concludes that Ratliff's injuries fall within the malpractice and professional services exclusion. The defendant's motion for judgment should be sustained."

The judgment is affirmed.

All concur.