**Joseph P. DiBENEDITTO, M.D., Plaintiff–Appellant,**

v.

**The MEDICAL PROTECTIVE COMPANY, Defendant–Appellee.**

No. 99–6525.

United States Court of Appeals, Sixth Circuit.

Feb. 8, 2001.

Before BOGGS and MOORE, Circuit Judges; and COHN, Senior District Judge.*

---

* The Honorable Avern Cohn, Senior United States District Judge for the Eastern District of Michigan, sitting by designation.

PER CURIAM.

Plaintiff-appellant, Joseph P. DiBeneditto, appeals the district court's decision granting summary judgment to defendant-appellee, The Medical Protective Company ("MedPro"), in a diversity action alleging that MedPro breached an insurance contract by refusing to defend and indemnify DiBeneditto in a sexual harassment action filed by employees of DiBeneditto. We affirm.

I

DiBeneditto is a medical doctor who practices in Bowling Green, Kentucky, and who specializes in occupational health medicine. DiBeneditto owns National Occupational Health Associates, P.S.C. (NOHA). Employees of NOHA assist DiBeneditto in operating two NOHA offices.

In 1995, Kim Craig and Marty Renfro Popelier filed complaints against DiBeneditto. Both plaintiffs were former employees of NOHA.[1] Both Craig and Popelier alleged that DiBeneditto engaged in sexual innuendos, comments with sexual overtones, touchings of a sexual nature, sexual propositions and advances, comments about his sex life, and comments about the plaintiffs' anatomies and sex lives. Craig and Popelier claimed that DiBeneditto's conduct created an intimidating and hostile work environment, interfered with each plaintiff's ability to perform her job duties, and constituted sexual harassment in violation of KY. REV. STAT. ANN. § 344.040. The plaintiffs also alleged that the conduct constituted employment discrimination on the basis of sex in violation of KY. REV. STAT. ANN. § 344.040. Craig and Popeli-

er also alleged that DiBeneditto retaliated against each of them in violation of KY. REV. STAT. ANN. § 344.040. Popelier claimed that DiBeneditto reduced her job responsibilities and assigned her menial tasks. Craig alleged that DiBeneditto assigned her to job duties for which she was not trained and harassed her with telephone calls during the night. Finally, both plaintiffs alleged that DiBeneditto's conduct constituted the torts of outrage and invasion of privacy. Craig's case was tried before a jury, but the jury verdict was ordered sealed when NOHA and DiBeneditto reached a settlement with Craig. Soon thereafter, Popelier's case was also settled on similar terms.

After receiving notice of the lawsuits, DiBeneditto informed MedPro of the actions and requested coverage under the insurance policy he had with MedPro. MedPro denied coverage after both cases were settled.

The relevant portions of DiBeneditto's insurance policy state:

> [Med Pro] hereby agrees to DEFEND and PAY DAMAGES, in the name and on behalf of the Insured or his estate, A IN ANY CLAIM FOR DAMAGES, AT ANY TIME FILED, BASED ON PROFESSIONAL SERVICES RENDERED OR WHICH SHOULD HAVE BEEN RENDERED, BY THE INSURED OR ANY OTHER PERSON FOR WHOSE ACTS OR OMISSIONS THE INSURED IS LEGALLY RESPONSIBLE IN THE PRACTICE OF THE INSURED'S PROFESSION DURING THE TERM OF THE POLICY: EXCEPT this policy does not cover

---

1. DiBeneditto states in his brief that Craig and Popelier were patients of DiBeneditto. There does not appear to be any evidence in the record supporting this assertion. Moreover, Craig's and Popelier's complaints do not state that they were patients of DiBeneditto, nor do any of their allegations concern actions by DiBeneditto against Craig and Popelier as patients. All of the allegations concern actions taken by DiBeneditto against Craig and Popelier in the context of their employment.

1 any liability growing out of the ownership, operation or supervision by the Insured or an employee of the Insured of (a) any hospital, sanitarium, clinic with bed and board facilities or (b) any business enterprise, whether or not related to patient care and/or treatment;

2 payment of damages (BUT WILL DEFEND) in any claim for damages if said damages are in consequence of the performance of a criminal act or willful tort or sexual act . . . .

## II

DiBeneditto filed suit in Kentucky state court against MedPro in November 1998, alleging state law breach of contract. DiBeneditto contended that his insurance contract with MedPro obligated MedPro to defend and indemnify him in the sexual harassment lawsuits filed by Craig and Popelier. DiBeneditto claimed that he incurred $28,676.25 in attorney's fees and court costs, and $50,000 in settlement costs. MedPro removed the case to federal court on the basis of diversity.

In July 1999, both MedPro and DiBeneditto filed motions for summary judgment. On November 8, 1999, the district court granted MedPro's motion for summary judgment and denied DiBeneditto's motion. The district court ruled that the sexual harassment claims were not covered under DiBeneditto's professional liability insurance policy with MedPro. First, the court concluded that MedPro did not have a duty to defend or indemnify DiBeneditto in suits brought by former employees for sexual harassment because the policy only covered "professional services." Second, the court determined that the "business enterprise exclusion" in the insurance contract precluded coverage.

## III

DiBeneditto argues that the district court erred by ruling that MedPro did not have a duty to defend and indemnify DiBeneditto on the basis that Craig's and Popelier's claims were not covered by DiBeneditto's insurance contract with MedPro since they were not claims based on professional services rendered.

Under Kentucky law, the determination of whether an insurance company has a duty to defend its insured is made by comparing the allegations in the complaint with the terms of the insurance policy. *See James Graham Brown Found., Inc. v. St. Paul Fire & Marine Ins. Co.,* 814 S.W.2d 273, 279 (Ky.1991). The determination is to be made at the outset of the litigation. *See ibid.* The insurance company has a duty to defend if the language of the complaint brings it within the insurance coverage. *See ibid.* Kentucky courts have made it clear that allegations in a complaint are not by themselves sufficient to trigger the duty to defend, but rather, the obligation to defend arises out the language of the insurance contract. *See Thompson v. West American Ins. Co.,* 839 S.W.2d 579, 581 (Ky.Ct.App.1992) (citing *Cincinnati Ins. Co. v. Vance,* 730 S.W.2d 521 (Ky.1987)). The insurance company "at its own peril, may elect not to defend the original action against a putative insured, although thereafter [the insurance company] may be liable for the judgment if it is judicially determined that the policy did in fact provide coverage in these circumstances." *Vance,* 730 S.W.2d at 522.

DiBeneditto argues that MedPro had a duty to defend him against the claims brought by Craig and Popelier. DiBeneditto asserts that the allegations in Craig's and Popelier's complaints "potentially, possibly or might" have come within the terms of DiBeneditto's policy with

MedPro. DiBeneditto argues that his policy, which covers "any claim for damages ... based on professional services rendered," includes claims brought against him by his employees. He claims that "[i]t is difficult to imagine the rendering of professional services without having contact with employees." Plaintiff–Appellant's Brief, at 21. DiBeneditto then relies on an exception to the policy indicating that MedPro will *not* pay damages, but *will* defend "any claim for damages if said damages are in consequence of the performance of a criminal act or willful tort or sexual act." In sum, DiBeneditto argues that his professional services policy covers actions brought against him by his employees, and when those actions involve sexual acts, MedPro has a duty to defend him, but not to pay damages.

The question we must confront, then, is the first step in DiBeneditto's logic. We must determine the meaning of "professional services" as contemplated by the insurance contract and whether that meaning encompasses claims brought against DiBeneditto by his employees for sexual harassment occurring solely within the context of employment. If "professional services" covers claims brought by employees of DiBeneditto for sexual harassment occurring solely with the context of employment, then the language of the insurance contract indicates that MedPro has a duty to defend DiBeneditto, but not to pay damages against him, since the employees' claims are based on sexual acts.

Kentucky courts have recognized that the term "professional services" is properly defined as requiring an exercise of judgment or training. *See Ratliff v. Employers' Liability Assur. Corp.*, 515 S.W.2d 225, 230 (Ky.1974). In *Ratliff*, the court ruled that a patient could not recover damages for a broken leg under a psychiatric hospital's general liability insurance policy

because the negligence of the hospital was based on actions of nurses that related to their provision of professional services. The hospital's insurance policy had an exclusion for claims for injury brought on the basis of the "rendering or failure to render ... any service or treatment conducive to health or of a professional nature." *Ratliff*, 515 S.W.2d at 226. The *Ratliff* court relied on *Marx v. Hartford Accident & Indemnity Co.*, 183 Neb. 12, 157 N.W.2d 870 (Neb.1968), in which the Nebraska Supreme Court stated, "in determining whether a particular act is of a professional nature or a 'professional service' we must look not to the title or character of the party performing the act, but to the act itself." *Id.* at 872. The *Ratliff* court held that the act—the nurses' failure to recognize the plaintiff's debilitated condition as a result of acute alcoholism and the administration of drugs by the hospital, which caused him to injure himself when returning to his bed unassisted from a nurses' station—required the nurses to exercise their expert professional ability. 515 S.W.2d at 230.

*Marx* involved a fire mistakenly caused by a physician's employee while refilling a hot water sterilizer. No patients were present or were being treated at the time. The physician sought coverage from his insurance company under a policy that covered "malpractice, error or mistake of the insured, or a person for whose acts or omissions the insured is legally responsible ... in rendering or failing to render professional services ...." *Id.* at 871. The Nebraska Supreme Court ruled that there was no coverage, stating:

> The insurer's liability is thus limited to the performing or rendering of 'professional' acts or services. Something more than an act flowing from mere employment or vocation is essential. The act or service must be such as

exacts the use or application of special learning or attainment of such kind.

*Id.* at 871–72.

DiBeneditto's conduct at issue in this case did not relate to the rendering of professional services, because it bore no connection to his education and training as a physician. Just as the policy in question in *Marx* did not apply to the accident caused by the physician's employee, so does DiBeneditto's policy not apply to the sexual harassment claims brought by his former employees. DiBeneditto's policy covers claims for damages based on services he renders in the exercise of his judgment and training as a doctor. The coverage simply does not encompass sexual harassment claims brought by DiBeneditto's former employees based solely on acts relating to their employment. This is an additional risk undertaken by DiBeneditto in hiring employees to assist him in operating his offices. Furthermore, it is an additional risk for which DiBeneditto can obtain additional coverage. As a result, it was proper for the district court to grant summary judgment to MedPro on the basis that the DiBeneditto's professional services policy did not cover the sexual harassment and employment discrimination claims brought against him by his former employees.[2]

## IV

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

**2.** Since we hold that the language of DiBeneditto's professional services insurance policy does not cover claims brought by his former employees for sexual harassment, we will not reach MedPro's additional argument that the sexual harassment claims against DiBeneditto are excluded from the policy as a result of the policy's business enterprise exception.