RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2003 FED App. 0230P (6th Cir.)
File Name: 03a0230p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

WESTFIELD INSURANCE CO.,
*Plaintiff-Appellant,*

*v.*

No. 01-6390

TECH DRY, INC.; GAYLE
WILLIAMSON,
*Defendants-Appellees.*

Appeal from the United States District Court
for the Eastern District of Kentucky at Covington.
No. 00-00186—William O. Bertelsman, District Judge.

Argued: June 10, 2003

Decided and Filed: July 15, 2003

Before: MOORE and GIBBONS, Circuit Judges;
SCHWARZER, Senior District Judge.[*]

———————————

[*] The Honorable William W Schwarzer, Senior United States District Judge for the Northern District of California, sitting by designation.

———————————

## COUNSEL

**ARGUED:** John H. Engle, KOLSTEIN, ENGLE & PRINCE, Cincinnati, Ohio, for Appellant. Suzanne Cassidy, O'HARA, RUBERG, TAYLOR, SLOAN & SERGENT, Covington, Kentucky, for Appellees. **ON BRIEF:** John H. Engle, KOLSTEIN, ENGLE & PRINCE, Cincinnati, Ohio, for Appellant. Suzanne Cassidy, O'HARA, RUBERG, TAYLOR, SLOAN & SERGENT, Covington, Kentucky, for Appellees.

———————————

## OPINION

———————————

KAREN NELSON MOORE, Circuit Judge. Plaintiff-Appellant Westfield Insurance Company ("Westfield") appeals the district court's grant of summary judgment to Defendants-Appellees Tech Dry, Inc. ("Tech Dry") and Gayle Williamson ("Williamson"). When Williamson's mother was murdered by a Tech Dry employee who had previously done work at her mother's home, Williamson filed an action against Tech Dry. She alleged that Tech Dry proximately caused the death of her mother by negligently hiring and retaining the employee who murdered her mother. Westfield has a duty to defend Tech Dry, its insured, in actions seeking damages for bodily harm if they are caused by an "occurrence." In the present action, Westfield seeks a declaratory judgment that it is not obligated to defend Tech Dry in Williamson's action because Tech Dry's negligent hiring and retention of an employee is not an "occurrence" under the terms of Tech Dry's insurance liability contract. Upon cross-motions for summary judgment, the district court granted summary judgment to Tech Dry and Williamson, concluding that because the meaning of the policy term "occurrence" was ambiguous, Westfield was obligated to

defend Tech Dry in the underlying action. Westfield appeals. Because the Kentucky courts would likely find that negligent hiring and retention of an employee constitutes an "occurrence" under the terms of the policy in question, we **AFFIRM** the district court.

## I.  FACTS AND PROCEDURE

Fred Furnish ("Furnish") performed work at Ramona Williamson's ("Ramona") home while employed as a carpet cleaner for Tech Dry. In early June 1998, Tech Dry terminated Furnish's employment. Several weeks later, Furnish broke into Ramona's home, where he assaulted and murdered Ramona. Furnish was subsequently convicted of capital murder in Kentucky state court.

After she was named the executor of her mother's estate, Williamson filed a wrongful death action against Tech Dry in Kentucky state court. Williamson alleged that an employee of Tech Dry caused her mother's death and that Tech Dry was negligent in hiring and retaining Furnish as an employee. Jeff Cheser ("Cheser"), the Tech Dry franchise owner and manager who hired Furnish, admits that he did not perform a criminal background check on Furnish. Moreover, Cheser retained Furnish as an employee even after receiving complaints of theft from customers and learning that Furnish had stolen money from Tech Dry.

Tech Dry, Westfield's insured, asked Westfield to provide a defense and indemnity for the claims asserted against Tech Dry in Williamson's wrongful death action. The liability policy in question obligates Westfield to provide the following coverage:

  a.  We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages.

However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. . . .

***

  b.  This insurance applies to "bodily injury" and "property damage" only if:

    (1)  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory;" and

    (2)  The "bodily injury" or "property damage" occurs during the policy period.

  c. Damages because of "bodily injury" include damages claimed by any person or organization for care, loss of services or death resulting at any time from the "bodily injury."

Joint Appendix ("J.A.") at 82 (Policy). The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." J.A. at 93 (Policy). The policy excludes from coverage "'[b]odily injury' or 'property damage' expected or intended from the standpoint of the insured." J.A. at 82 (Policy).

In response to Tech Dry's request for a defense and indemnity, Westfield filed the present action in United States District Court. Westfield seeks a declaratory judgment that Tech Dry's insurance policy does not require Westfield to defend Tech Dry or to pay or satisfy any judgment or award rendered to Williamson in the underlying wrongful death action.

The parties submitted a stipulation of facts and filed cross-motions for summary judgment. The district court denied Westfield's motion for summary judgment and granted Tech Dry's and Williamson's motions for summary judgment. Westfield timely appealed.

## II. ANALYSIS

### A. Standard of Review

We review the district court's grant of summary judgment de novo, employing the same legal standard applied by the district court. *Equitable Life Assurance Soc'y of U.S. v. Poe*, 143 F.3d 1013, 1015 (6th Cir. 1998). "We also review de novo a district court's order denying summary judgment, if the denial is based on purely legal grounds." *Black v. Roadway Express, Inc.*, 297 F.3d 445, 448 (6th Cir. 2002). When a district court denies summary judgment to one party on the ground that it is granting summary judgment to another party, the denial of summary judgment is based on a legal conclusion rather than the district court's finding of a genuine issue of material fact. *Id.* Because the district court denied summary judgment for Westfield on the purely legal ground that it was granting summary judgment to Tech Dry and Williamson, we therefore review de novo both the district court's grant of summary judgment to Tech Dry and Williamson and the district court's denial of summary judgment to Westfield.

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). A dispute over a material fact is not considered "genuine" unless a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (quotation omitted). When reviewing cross-motions for summary judgment, we must evaluate each motion on its own merits and view all facts and inferences in

the light most favorable to the nonmoving party. *Taft Broad. Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991).

Because this court is sitting in diversity,[1] *see* 28 U.S.C. § 1332, we apply the law, including the choice of law rules, of the forum state. *Hayes v. Equitable Energy Res. Co.*, 266 F.3d 560, 566 (6th Cir. 2001) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941)). The parties agree that we should apply Kentucky law. Because the question at issue has not yet been resolved by the Kentucky Supreme Court, we must engage in the challenging task of attempting to predict what the Kentucky Supreme Court would do if confronted with the same issue. *Stalbosky v. Belew*, 205 F.3d 890, 893-94 (6th Cir. 2000).

### B. Westfield's Duty to Defend and Indemnify

Tech Dry's policy provides that Westfield will defend Tech Dry in suits seeking damages for bodily injury or property damage caused by an "occurrence." The policy further defines occurrence as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." J.A. at 93 (Policy). The district court found that the term "accident" is "inherently ambiguous," J.A. at 17 (Op. & Order), and construed the ambiguity in favor of finding coverage, *Healthwise of Kentucky, Ltd. v. Anglin*, 956 S.W.2d 213, 217 (Ky. 1997). Westfield contests the district court's finding of ambiguity, contending that negligent hire and retention is clearly not an "occurrence" under the terms of the policy. According to Westfield, the policy therefore does not provide coverage for a wrongful death suit arising under these circumstances.

---

[1]For diversity purposes, Westfield — an Ohio corporation with its principal place of business in Ohio — is considered an Ohio citizen, while Williamson and Tech Dry — a Kentucky corporation with its principal place of business in Kentucky — are deemed citizens of Kentucky.

The interpretation of an insurance contract is a matter of law. *Stone v. Ky. Farm Bureau Mut. Ins. Co.*, 34 S.W.3d 809, 810 (Ky. Ct. App. 2000). Under Kentucky law, a court should determine at the outset of litigation whether an insurance company has a duty to defend its insured by comparing the allegations in the underlying complaint with the terms of the insurance policy. *DiBeneditto v. Med. Protective Co.*, 3 Fed. Appx. 483, 485 (6th Cir. 2001). An insurance company has a duty to defend its insured if the language of an underlying complaint against the insured brings the action within the scope of the insurance contract. *Id.*

**1. Ambiguity**

As an initial matter, we must determine whether the policy terms "occurrence" and "accident" are ambiguous. The district court reasoned that "the word 'accident' . . . . is inherently ambiguous." J.A. at 17 (Op. & Order) (noting that Black's Law Dictionary gives more than twenty meanings for the word). However, the district court also noted that "[i]f used in an insurance contract, the ordinary meaning of the term is 'an event which . . . is unusual and not expected by the person to whom it happens.'" J.A. at 18 (Op. & Order) (quoting Black's Law Dictionary (5th ed. 1979)) (emphasis omitted).

Where policy terms are not ambiguous, "the ordinary meaning of the words chosen by the insurer is to be followed." *James Graham Brown Found. v. St. Paul Fire & Marine Ins. Co.*, 814 S.W.2d 273, 279 (Ky. 1991). In other words, "the terms should be interpreted in light of the usage and understanding of the average person." *Stone*, 34 S.W.3d at 811 (citing *Fryman v. Pilot Life Ins. Co.*, 704 S.W.2d 205 (Ky. 1986)).

The Kentucky Supreme Court has addressed the significance of the word "accident" in insurance policies, although in a slightly different context:

The words "accident", "accidental", and "accidental means", as used in insurance policies, have never acquired a technical meaning in law, and must be interpreted according to the usage of the average man and as they would be read and understood by him in the light of the prevailing rule that uncertainties and ambiguities must be resolved in favor of the insured. An accident is generally understood as an unfortunate consequence which befalls an actor through his inattention, carelessness or perhaps for no explicable reason at all. The result is not a product of desire and is perforce accidental. Conversely, a consequence which is a result of plan, design or intent is commonly understood as not accidental.

*Fryman*, 704 S.W.2d at 206 (citation omitted); *see Stone*, 34 S.W.3d at 811 ("In the context of an insurance policy, the word 'accident' should be interpreted in accordance with its common usage."). The Kentucky Supreme Court subsequently described *Fryman* as "hold[ing] that terms of insurance contracts have no technical meaning in law and are to be interpreted according to the usage of the average man and as they would be read and understood by him in the light of the prevailing rule that uncertainties and ambiguities must be resolved in favor of the insured." *Brown Found.*, 814 S.W.2d at 279.

The Kentucky Court of Appeals has relied on *Fryman*'s articulation of the average man's understanding of "accident" to analyze the definition of "occurrence" that is at issue in this case. Interpreting the "occurrence" term of a different policy, the Kentucky Court of Appeals concluded that although the policy did not define "accident," it should be read "according to the usage of the average person," as explained in *Fryman*. *Thompson v. W. Am. Ins. Co.*, 839 S.W.2d 579, 580 (Ky. Ct. App. 1992). The Kentucky Court of Appeals also cited *Fryman* when interpreting a similar policy provision in *Stone*, explaining that, "according to its plain meaning, an 'accident'

denotes something that does not result from a plan, design, or an intent on the part of the insured." *Stone*, 34 S.W.3d at 812.

In light of the Kentucky Supreme Court's analysis of "accident" in *Fryman* and the Kentucky Court of Appeals's subsequent reliance on *Fryman* when interpreting the "occurrence" terms of insurance policies, we conclude that these terms were not ambiguous in the policy in question.

## 2. The Conduct at Issue

Because the term "occurrence" is not ambiguous, we must determine whether the "occurrence" causing Ramona's injuries and death was covered by the policy. To do so, we must identify the "occurrence" at issue. *See Farmers Alliance Mut. Ins. Co. v. Salazar*, 77 F.3d 1291, 1295 (10th Cir. 1996) ("Before we apply the policy's definition of 'occurrence,' we must first decide what event or events in the causal chain leading to [the injury] should be the focus of our inquiry."). Williamson's complaint in the underlying wrongful death action alleges that Tech Dry's negligence was the proximate cause of Ramona's wrongful death and Westfield does not dispute it. Our inquiry will therefore focus on whether Tech Dry's allegedly negligent decision to hire and retain an employee is a qualifying "occurrence" under the policy.[2]

The issue of whether negligent hiring and retention of an employee can constitute an "occurrence" in the context of a

---

[2]Westfield argues that this court has previously concluded that where an employer negligently hires an employee and the employee harms a customer, the employee's actions "constitute the occurrence resulting in injury" under a similarly worded policy. *Monticello Ins. Co. v. Ky. River Cmty. Care, Inc.*, No. 98-5372, 1999 WL 236190, at *4 (6th Cir. 1999). But *Monticello Insurance* did not address whether the negligent hiring and retention of an employee could constitute an "occurrence" under the terms of the general liability policy in question. Rather, it distinguished between the employer's negligent hiring and the employee's assault only for the purpose of determining whether the "occurrence" in question took place during the life of a particular policy.

general liability policy is a matter of first impression in Kentucky. Therefore, we must predict how the Kentucky Supreme Court would resolve this issue. *Stalbosky*, 205 F.2d at 893-94. Other courts have reached differing conclusions about whether negligent hiring constitutes an accident and, more specifically, about whether negligent hiring claims are covered "where the person hired or supervised has committed an intentional tort."[3] 7 Couch on Insurance 3d § 103:31, at 103-74 (1997).

Several courts have held that because the decision to hire or retain an employee is an intentional business decision, even when the decision is negligently made, it is not accidental. *See, e.g., Erie Ins. Co. v. Am. Painting Co.*, 678 N.E.2d 844, 846 (Ind. Ct. App. 1997). As one court explained, "a volitional act — which is always intended — does not constitute an accident, even where the results may be unexpected or unforeseen." *Allstate Ins. Co. v. Norris*, 795 F. Supp. 272, 275 (S.D. Ind. 1992). Thus, because the employer "intended to commit the act that resulted in injury" — here, the hiring and retention of Furnish — these courts would conclude that the injury to Ramona was not caused by an accident. *Allstate Ins. Co. v. Davis*, 6 F. Supp. 2d 992, 996 (S.D. Ind. 1998).

---

[3]Although some of the cases discussed herein analyze different types of policies and/or slightly different definitions of "occurrence" and "accident," it is nevertheless helpful to consider their analyses of these terms to resolve the issue at hand. As is the case here, most policies require an "occurrence" to trigger coverage and define that term as an "accident." Furthermore, most policies exclude coverage for injuries "expected or intended from the standpoint of the insured," J.A. at 82 (Policy), either by incorporating self-excluding language in the definition of "occurrence" or in a separate exclusion clause. *See N. Sec. Ins. Co. v. Perron*, 777 A.2d 151, 157-58 (Vt. 2001) (explaining that the effect of "expected or intended" language is the same regardless of whether it is included in the definition of "occurrence" or in a separate exclusion clause).

Other courts have reached the opposite conclusion, assuming that negligence is inherently not intentional. *See United Fire & Cas. Co. v. Shelly Funeral Home*, 642 N.W.2d 648, 654 (Iowa 2002) (listing cases in which "other courts faced with similar facts and the identical 'occurrence' and intentional act provisions before us have found coverage for negligent hiring and supervision"); *Silverball Amusement, Inc. v. Utah Home Fire Ins. Co.*, 842 F. Supp. 1151, 1165 (W.D. Ark. 1994) ("[A]n insurer must provide coverage and a legal defense to an insured where a complaint alleges that an employer was negligent in hiring and supervision of an employee who subsequently committed an intentional tort. An insurance policy would require an exceedingly precise exclusionary clause to avoid that fundamental principle, and there is no such clause in the instant case. . . . The policy covers negligent acts."), *aff'd*, 33 F.3d 1476 (8th Cir. 1994).

These courts caution against confusing the evaluation of an employee's intentional conduct and the employer's negligent conduct. For example, one court reasoned,

> In refusing to separate the employer's alleged negligence from the employee's intentional conduct, . . . courts impermissibly ignored the employer's independent acts which gave rise to the alleged tort. Consequently, in holding that the *employee's* intentional conduct places the insured's negligence outside the definition of "occurrence," . . . courts read the exclusion too broadly.

*U.S. Fid. & Guar. Co. v. Open Sesame Child Care Ctr.*, 819 F. Supp. 756, 760 (N.D. Ill. 1993).[4]  When courts deny

---

[4] The district court for the Northern District of Illinois emphasized that "[t]he tort of negligent hiring is a well-recognized claim . . . and is brought against an employer for its negligent hiring of an employee who intentionally injures a third party," *United States Fidelity and Guaranty Co. v. Open Sesame Child Care Center*, 819 F. Supp. 756, 760 (N.D. Ill. 1993), suggesting that the nature of the tort itself should guide courts in distinguishing between the employer's and employee's conduct for the

coverage in negligent hiring cases, they arguably transform an employer's negligent acts into intentional acts, dissolving the distinction between negligent and intentional conduct. *See Doe v. Shaffer*, 738 N.E.2d 1243, 1247 (Ohio 2000). To avoid this problem, we will "look to the actions of the insured and not the perpetrator of the intentional act in determining whether there is coverage" of Tech Dry for its alleged negligent hiring and retention of Furnish. 14 Couch on Insurance 3d § 201:18, at 201-41 (1999).

In analyzing whether Tech Dry's conduct was an "occurrence," we note the Kentucky Supreme Court's recognition that "[c]ourts and commentators alike are in agreement that the term 'occurrence' is to be broadly and liberally construed in favor of extending coverage to the insured." *Brown Found.*, 814 S.W.2d at 278; *see Thompson*, 839 S.W.2d at 580 ("Our Supreme Court has pronounced that 'occurrence' is to be given broad and liberal construction in favor of extending coverage."). However, "[w]e must give the policy its plain meaning and are constrained from enlarging the risks contrary to the natural and obvious meaning of the insurance contract." *Walker v. Econ. Preferred Ins. Co.*, 909 S.W.2d 343, 346-47 (Ky. Ct. App. 1995).

Under Kentucky law, even if Tech Dry's conduct in hiring and retaining Furnish was intentional and the injury to Ramona was foreseeable, the policy in question nevertheless

---

purpose of determining coverage. *See U.S. Fid. & Guar. v. Toward*, 734 F. Supp. 465, 470 (S.D. Fla. 1990) (recognizing the tort of negligent hiring and supervision and explaining that "[t]he focus of these torts is the first wrong, the defendant's negligence, not the second wrong, the third-party's wrongful conduct which leads to the plaintiff's injury"). Like Illinois and Florida, Kentucky also clearly "recognizes that an employer can be held liable when its failure to exercise ordinary care in hiring or retaining an employee creates a foreseeable risk of harm to a third person." *Oakley v. Flor-Shin, Inc.*, 964 S.W.2d 438, 442 (Ky. Ct. App. 1998).

provides coverage to Tech Dry as long as "the injury was not actually and subjectively intended." *Thompson*, 839 S.W.2d at 580. An insurer cannot deny coverage on grounds that conduct was intentional rather than accidental if the insured did not possess the requisite intent to do injury. *Brown Found.*, 814 S.W.2d at 277. Kentucky courts will infer intent to injure from "inherently injurious" acts, such as sexual molestation, *Thompson,* 839 S.W.2d at 581, or punching someone in the face, *Walker*, 909 S.W.2d at 345. But conduct is not considered inherently injurious unless it is "substantially certain to result in some injury." *Thompson*, 839 S.W.2d at 581. By nature, negligently hiring and retaining an employee is not substantially certain to result in some injury and therefore is not inherently injurious.

We therefore conclude that the Kentucky Supreme Court would hold that Tech Dry is entitled to coverage because Tech Dry's negligent hiring and retention of Furnish constitutes an "accident," and therefore an "occurrence," under the terms of the governing policy.

### III. CONCLUSION

For the reasons explained above, we **AFFIRM** the district court's grant of summary judgment for Tech Dry and Williamson. Although the district court erred by concluding that the insurance policy was ambiguous, Tech Dry's negligent hiring and retention of Furnish nevertheless constitutes an "occurrence" under the policy.