The MEDICAL PROTECTIVE COMPA-
NY OF FORT WAYNE,
INDIANA, Appellant,

v.

Jacqueline Marie DAVIS, Guardian of the
Estate of Clifton F. Davis, Jr., and
Jacqueline Marie Davis, Appellees.

Jacqueline Marie DAVIS, Guardian of the
Estate of Clifton F. Davis, Jr., and Jac-
queline Marie Davis, Cross-Appellants,

v.

The MEDICAL PROTECTIVE COMPA-
NY OF FORT WAYNE, INDIANA,
Cross-Appellee.

Court of Appeals of Kentucky.

Feb. 23, 1979.

Discretionary Review Denied June 5, 1979.

John G. Crutchfield, Louisville, for appel-
lant and cross-appellee.

Edward M. Post, Louisville, for appellees
and cross-appellants.

Before HOWERTON, REYNOLDS and
VANCE, JJ.

VANCE, Judge:

The question is the extent of the liability,
if any, of an insurance company which has
offered to defend a malpractice action un-
der a reservation of rights when the insured
refuses to accept the conditional defense
and sustains a default judgment because of
failure to answer an interrogatory.

The appellant, The Medical Protective
Company of Fort Wayne, Indiana, issued its

policy covering malpractice to Dr. Benjamin Jackson. In July 1970, Clifton Davis, Jr., while hospitalized under Dr. Jackson's care, suffered a serious brain injury. Suit was instituted against Dr. Jackson on July 6, 1971. On July 21, 1971, Dr. Jackson's wife reported the claim to the company. The company representative stated that some forms would be sent to Dr. Jackson but that he need not consider himself sued until served with summons. The summons was not served until October 8, 1971.

On October 8, 1971, the appellant notified Dr. Jackson that it would take the necessary steps to protect his interests but only upon a strict reservation of its rights and defenses under the policy. Dr. Jackson was informed that the company admitted no duty to defend or to pay any judgment obtained against him.

The appellant contends that Dr. Jackson breached a duty imposed by the policy to cooperate in the defense of the claim. Dr. Jackson did refuse to allow a defense by the lawyers engaged by the company and did refuse to cooperate with the company in the defense of the action.

Prior to the time that the company sent its reservation of rights letter on October 8, 1971, Dr. Jackson had not been served with summons. The only suggestions of non-cooperation on his part up to that time were: (1) that he had not personally reported the claim, but it was admitted that his wife did report it and no contention is made that the report was not timely; (2) that Dr. Jackson had settled another unrelated claim without reporting it to the company, but it is not suggested how this would in any way relieve the company of the duty to defend and or pay this claim; and, (3) that he had failed to return the forms sent to him by the company, but it is admitted that Dr. Jackson was told not to consider himself sued until he was served with summons.

We think as a matter of law that none of the above listed items were sufficient to avoid the policy in any way. As of the date that the reservation of rights letter was forwarded to Dr. Jackson, he had not failed to cooperate with the company. That he failed to do so thereafter will not relieve the company if the subsequent failure to cooperate was justified.

██ We elect to align ourselves with those jurisdictions which hold that an insured is not required to accept a defense offered by the insurer under a reservation of rights. *National Battery Co. v. Standard Accident Insurance Company*, 226 Mo.App. 351, 41 S.W.2d 599 (1931); *Taylor v. Safeco Insurance Co.*, Fla.App., 361 So.2d 743 (1978); *Butters v. City of Independence*, Mo., 513 S.W.2d 418 (1974); *Norton v. Farmers Automobile Inter-Insurance Exchange*, 40 Cal.App.2d 556, 105 P.2d 136 (1940).

The reason for this is evident. When the insurer has the obligation to pay the judgment, it surely is entitled to control the defense of the claim. But when the insurer reserves a right to assert its nonliability for payment there is little or no reason to require the insured to surrender defense of the claim to a company which asserts that it has no obligation to satisfy the claim. Under such conditions the insured has the right to refuse the proffered defense and conduct his own defense.

That is what Dr. Jackson did in this case. The correspondence between the various parties leaves no room for question that Dr. Jackson refused to accept a defense conditioned on a reservation of rights (although he may have been prompted to refuse the defense for other reasons as well).

Dr. Jackson undertook his own defense without assistance of counsel. In so doing he failed to comply with the rules of civil procedure and his pleadings were stricken and default entered. There is no suggestion, however, that the default was the result of any collusion or attempt to defraud the insurer. Dr. Jackson attempted to defend himself as well as he could and to that end prosecuted an appeal from the judgment.

██ That an insured may seek to defend himself without counsel after refusing to accept a defense offered under a reservation of rights is one of the risks an insurer

must take when it elects to offer a defense under a reservation of rights. If it is correct in its position that the policy does not afford coverage or has been breached in some way, then it prevails regardless of whether the insured accepts the defense— but it offers such a defense at its peril, because if the insured refuses to accept it and elects to defend himself, the company is found by the result, in the absence of fraud or collusion, unless it can establish that the policy did not afford coverage or was breached by the insured.

■ In this case the insured refused to accept the qualified defense, he elected to defend himself, and the insurer did not establish noncoverage or that the insured had breached some duty it owed to the company. The company therefore became obligated to the extent of the policy limits of its liability and appellees were entitled to a directed verdict. The determination that a directed verdict should have been granted to appellees makes it unnecessary to discuss the various alleged trial errors.

The judgment obtained by Jacqueline Davis against Dr. Jackson was for $325,000.00. The policy limit was $200,000.00, and appellees were awarded judgment in that amount. The appellees attempted to amend their complaint to allege an assignment by Dr. Jackson to appellees of all claims that Dr. Jackson had against appellant and also to allege entitlement to bring the action as a creditor of the estate. By the amendment the appellees sought to recover the amount by which their judgment exceeded the policy limits and also the sum of $1,000,000.00 for mental suffering and anguish caused to Dr. Jackson by appellant. The amendment was not permitted and a cross-appeal was prosecuted from that ruling.

■ We affirm the ruling of the trial court. Although amendments to pleadings should be freely allowed, the trial judge is nonetheless allowed considerable discretion in controlling the course of the trial. In this case the proffered amendment in this already complex case sought to bring in several new issues and sought recovery of some items at least which very clearly were unrelated to the original claim for malpractice. Under these circumstances we do not think the trial judge clearly abused his discretion in disallowing the amendment.

The judgment is affirmed on both the appeal and the cross-appeal.

All concur.