CINCINNATI INSURANCE COMPANY
and Red Arrow Delivery, Inc.,
Appellants,

v.

Sadie H. VANCE; Bessie L. Hacker;
and Kenneth Murphy, Appellees.

Supreme Court of Kentucky.

May 21, 1987.

Thomas M. Cooper, Larry C. Deener, Lexington, for appellants.

Buddy Salyer, Morehead, for appellees.

LEIBSON, Justice.

On April 23, 1982, Appellee Murphy, while operating a commercial vehicle owned by Red Arrow Delivery, collided with a vehicle occupied by Appellees Vance and Hacker, causing them injuries. Hacker and Vance sued Murphy for damages, alleging negligence, and also sued Red Arrow claiming that Murphy "was driving said van as agent and employee of the Defendant, Red Arrow Delivery, Inc., with [its] knowledge, consent and approval...."

Shortly after the accident Red Arrow's insurance carrier, Cincinnati Insurance Co., decided after an investigation that Murphy had no permission to use the vehicle on the occasion of the accident and did not qualify as an additional insured under the "persons insured" clause in its policy. That clause provides that in addition to the named insured, "an insured" includes:

"(c) Any other person while using an owned automobile ... with the permission of the named insured, provided his actual operation ... is within the scope of such permission...."

Cincinnati Insurance Co. employed counsel on behalf of its named insured, Red Arrow, who filed an Answer denying the allegations of the complaint that Murphy was driving the van as agent and employee of Red Arrow, and denying as well the claim that Murphy had Red Arrow's "knowledge, consent and approval" to drive the vehicle. Cincinnati Insurance Co.

denied that Murphy was insured by its policy and refused to defend him.

Murphy did not defend the tort action, and a default judgment was entered against him on liability only, reserving all other issues. Subsequently, Hacker and Vance elected to dismiss the suit against Red Arrow, and thereafter entered into an Agreed Judgment with Murphy specifying damages of $50,000 for Hacker and $40,000 for Vance.

Anticipating that Hacker and Vance (and Safeco Insurance Co. which had paid basic reparations benefits to them) would sooner or later seek to enforce collection of their judgments against Cincinnati Insurance Co. on grounds that their policy covered Murphy, Cincinnati Insurance Co. then filed this declaratory judgment action on behalf of itself and Red Arrow, seeking a declaration of rights that it had no liability under its policy.

The declaration of rights suit proceeded to jury verdict, with the jury answering "No" to an interrogatory asking whether it believed from the evidence that at the time the accident occurred Murphy was operating the vehicle belonging to Red Arrow Delivery, Inc. with the express or implied permission of Red Arrow Delivery and within the scope of such permission.[1] The trial court then entered judgment (1) stating that Murphy "was not insured at the time of the accident under the terms and conditions of the insurance policy issued by the plaintiff, Cincinnati Insurance Co., and covering the vehicle owned by the plaintiff Red Arrow Delivery, Inc.," and (2) dismissing the counterclaim that was made on behalf of Vance, Hacker and Murphy, which demanded indemnity for Murphy and judgment for Vance and Hacker against Cincinnati Insurance Co. in the amount of their judgments against Murphy.

On appeal the Kentucky Court of Appeals reversed the trial court and remanded the case "for proceedings consistent with [the Court of Appeals'] opinion." Presumably this directs the trial court to enter judgment holding that there was coverage and finding for Vance, Hacker and Murphy on their counterclaims. The theory behind the Court of Appeals' opinion was that Cincinnati Insurance Co. was compelled by the allegations of the original complaint by Vance and Hacker against Murphy, which alleged that the accident occurred in the course of Murphy's employment and that he had permission to use the vehicle, to defend Murphy in the initial suit; that "Cincinnati breached its duty to defend and is, therefore, estopped from asserting lack of permissive use;" and that "Cincinnati must therefore honor the Vance/Hacker judgments." The Court of Appeals was of the opinion that Cincinnati "could have defended under reservation of rights and subsequently litigated the issue of coverage or filed for declaration of rights at the first instance," but it did not have the option to refuse to provide any defense for Murphy and it is therefore estopped from now litigating the issue of coverage.

■ We have accepted discretionary review, and reverse. The issue is whether a liability insurance carrier, having decided that a claim alleged against a putative insured does not fall within the coverage of its policy, may elect not to defend and later litigate the coverage question, or whether the insurance company must defend regardless of coverage unless and until it has (1) entered into a reservation of rights agreement with the putative insured or (2) obtained a declaratory judgment that there is no coverage. We hold that the insurance company, at its own peril, may elect not to defend the original action against a putative insured, although thereafter it may be liable for the judgment if it is judicially determined that the policy did in fact provide coverage in the circumstances.

■ We agree with the appellees that the insurance company owes to its insured, including a person who falls within the definition of a permissive user, a duty to defend which is separate and apart, and in addition to, its duty to indemnify the in-

---

1. The trial court's instructions framing the issue of permission have not been challenged on appeal.

sured to the extent of its policy limits. *Ursprung v. Safeco Insurance Co. of America,* Ky., 497 S.W.2d 726 (1973). We further agree that if the insurer has elected not to provide a defense wrongfully or erroneously because it is later determined that the policy provided coverage, the insurer then would have breached the terms of its policy and the aggrieved party then would be entitled to recover all damages naturally flowing from the breach irrespective of policy limits. *Eskridge v. Educator and Executive Insurers, Inc.,* Ky., 677 S.W.2d 887 (1984). "[A] *mistaken* belief that coverage is not provided by the policy cannot justify a breach of contract." *Id.* at 889. However, we disagree with the proposition that the allegations of a complaint against a putative insured compel a defense even where no coverage exists, or that an insurance company that *rightfully* elects to deny coverage and provide no defense is thereafter estopped from litigating the coverage issue.

A liability insurance company that undertakes to defend a putative insured may thereafter be estopped from later denying coverage and withdrawing representation because the loss of the right by the insured to control and manage the case is itself a prejudice which will cause an estoppel. *American Cas. Co. of Reading, Pa. v. Shely,* 314 Ky. 80, 234 S.W.2d 303 (1950); *Hood v. Coldway Carriers, Inc.,* Ky., 405 S.W.2d 672 (1966). But it is not estopped from withdrawing from the defense of an action "if its action does not result in any prejudice to the [putative] insured." *Universal Underwriters Ins. Co. v. Travelers Ins. Co.,* Ky., 451 S.W.2d 616, 622 (1970).

The appellees, citing cases from other jurisdictions, urge us to adopt a so-called "prospective test," meaning by "prospective test" that if the allegations of the complaint set out facts which, if true, would come within the coverage of the policy, the liability insurance company is then compelled to provide and continue a defense unless and until it has obtained a judgment declaring that the policy is not applicable. The appellees argue that the insurance carrier has no right, unilaterally, to make an "initial determination" that there is no policy coverage, even if correct, and must instead provide a defense until such time as a court has determined that there is no coverage. There is no Kentucky case which either grants or denies to the insurance carrier or to the putative insured the right to unilaterally decide the coverage question. But there are a number of Kentucky cases wherein the insurance company denied coverge and no defense was provided, and thereafter the insurance company's liability or nonliability was determined in a subsequent law suit which decided according to the facts rather than on any theory of estoppel. For instance, in *The Medical Protective Co. of Fort Wayne v. Davis,* Ky.App., 581 S.W.2d 25 (1979), *Wolford v. Wolford,* Ky., 662 S.W.2d 835 (1984), and *Eskridge v. Educator and Executive Insurers, Inc.,* Ky., 677 S.W.2d 887 (1984), it was subsequently decided that the insurer had erroneously denied coverage and failed to provide a defense, and the insurance company was held liable on the basis of the judgment against the putative insured. However, in *Maryland Cas. Co. v. Hassell,* Ky., 426 S.W.2d 133 (1968) and Kentucky cases cited therein, the insurance company decided there was no coverage and elected not to defend the underlying law suit, and when it was subsequently determined that the true facts did not bring the occurrence within the policy coverage, the insurer's nonliability was upheld. While it is true that the so-called "prospective test" advocated by the present appellees was neither raised nor litigated in any of these cases, nevertheless the procedure followed in these cases was basically the same as that utilized by the Cincinnati Insurance Co. in the present case. Considering that the circumstances which would or would not give rise to an estoppel had already been outlined by our Court in the *American Cas. Co. of Reading v. Shely, supra,* case, it is hardly surprising that the expanded view of estoppel presently advocated has not been previously litigated in our Court.

In *O'Bannon v. Aetna Cas. & Surety Co.,* Ky., 678 S.W.2d 390 (1984), a wrongful death action had been filed against the

putative insured, and the insurance carrier potentially liable then filed a declaratory judgment suit to determine the coverage question. The trial court wherein the declaratory judgment action was pending elected to postpone trial of the declaratory judgment action until after the wrongful death action was tried. We held that this was not an abuse of discretion. We further held that because the policy coverage issue would not be determined before trial of the underlying wrongful death action, the insurance company could not be compelled to provide a defense to the underlying tort action, nor could the insured be compelled to accept counsel for the underlying tort action to be provided by the insurance company. In short, *O'Bannon* recognizes that the declaratory judgment action and the tort action against the putative insured are separate entities, and neither the insurer or the insured has a right to demand that the tort action be postponed until the declaratory judgment is decided or to demand that services covered by the policy be provided or accepted in the interim. It follows as a logical implication of the *O'Bannon* case that the insurer is not required to file a declaratory judgment action before the underlying tort action is determined under penalty of being estopped to later contest coverage if it has failed to do so.

In *Medical Protective Co. of Fort Wayne v. Davis, supra,* the Court of Appeals held that a putative insured was not required to accept the liability insurer's offer to defend him in the underlying tort action under a reservation of rights agreement, and could, instead, elect to refuse such a qualified defense and then later litigate the coverage question after a tort judgment had been recovered against him. The opinion states:

"If [the liability insurer] is correct in its position that the policy does not afford coverage or has been breached in some way, then it prevails [in the subsequent declaratory judgment action] regardless of whether the insured accepts the defense—but it offers such a defense at its peril, because if the insured refuses to accept it and elects to defend himself, the company is bound by the result, in the absence of fraud or collusion, unless it can establish that the policy did not afford coverage or was breached by the insured." 581 S.W.2d at 27.

It follows from the *Medical Protective Co.* case that, since the insurer cannot compel the insured to accept a defense qualified by a reservation of rights agreement, neither[1] is the insurance company compelled to offer one. The obligation to defend arises out of the liability insurance contract, not out of the allegations in a complaint against a putative insured. If the insurance company timely denies coverage, both sides then have the right to act independently of the other, subject only to then having to bear responsibility for the loss occasioned in the underlying tort action if wrong in their judgment about the policy coverage question.

The essence of our holding is that the coverage question will turn on the true facts as judicially determined and not on the claims of either party, or on the allegations of the complaint against the putative insured. The insurance company may change this result by so acting as to create an estoppel, but its decision to deny coverage and the duty to defend, to take no action, promptly communicated so that the putative insured will suffer no prejudice in making his own defense if he wishes to do so, does not cause an estoppel.

The decision of the Court of Appeals is reversed. The judgment of the trial court is affirmed.

All concur.