RENDERED:  FEBRUARY 9, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0078-MR

CASEY ARNOLD, INDIVIDUALLY;
CASEY ARNOLD AS
ADMINISTRATRIX OF THE ESTATE
OF CHAD ARNOLD; AND CASEY
ARNOLD AS NEXT FRIEND AND
GUARDIAN/CONSERVATOR FOR
MILES ARNOLD                                                      APPELLANTS


|  | APPEAL FROM SCOTT CIRCUIT COURT |
|---|---|
| v. | HONORABLE BRIAN PRIVETT, JUDGE |
|  | ACTION NO. 15-CI-00064 |


MEDIPORT, LLC; DR. TIMOTHY
CARROLL; LANDMARK AMERICAN
INSURANCE COMPANY; RICHARD
COVINGTON; RSUI INDEMNITY
COMPANY; STEVE MORRIS; AND
WESTFIELD INSURANCE
COMPANY                                                          APPELLEES


OPINION
AFFIRMING IN PART
AND DISMISSING
IN PART

** ** ** ** **

BEFORE:  ACREE, COMBS, AND ECKERLE, JUDGES.

COMBS, JUDGE:  In this wrongful death action, Casey Arnold, individually and as administratrix of the Estate of Chad Arnold and as Next Friend and Guardian/ Conservator of  Miles Arnold (referred to collectively as Arnold), appeals the May 2018 summary judgment of the Scott Circuit Court in favor of Westfield Insurance Company (Westfield) and the July 2021 summary judgment entered in favor of Landmark American Insurance Company and RSUI Indemnity Company (referred to collectively as Landmark).  With respect to the judgment in favor of Westfield, we affirm.  We dismiss the appeal of the judgment entered in favor of Landmark.

On February 12, 2013, Chad and Casey Arnold signed up online to participate in an extreme, five-kilometer foot race (the Rampage event) to be held at Kentucky Horse Park (the Horse Park) on March 2, 2013.  The race through the Horse Park was one commonly referred to as "extreme" because it incorporated an obstacle course for runners to navigate.  The Arnolds read the website established by the Rampage event organizers indicating that an ambulance and paramedics would be available at the venue in case of an emergency.

Mediport, LLC (Mediport) is in the business of providing on-site care to individuals in need of medical assistance prior to the arrival of emergency medical services.  In 2013, it provided a range of services, including basic first aid, basic life support, and advanced life support services.  Mediport provided services on a contract basis and regularly provided emergency medical technicians and/or

paramedics to some of Kentucky's horse racing facilities, including Keeneland Race Course, Red Mile Race Track, and the Horse Park. Their services were aimed at trainers, jockeys, and other equestrian professionals at various locations over the course of each track's meet.

Prior to March 2, 2013, it agreed to provide basic life support services during the Rampage event to be held at the Horse Park **and** to transport those participants requiring emergency care to a location within the Horse Park where they would be met by an ambulance. Basic life support services generally included care provided to those experiencing cardiac arrest, respiratory distress, or an obstructed airway. Mediport provided two passenger vans, two emergency medical technicians, and a paramedic to the Horse Park on race day. However, it did not agree to provide ambulance services or advanced life support services during the event.

On March 2, 2013, the Arnolds registered in person with event organizers at the Horse Park. After the race had begun, Chad Arnold collapsed and experienced cardiac arrest. Casey Arnold began CPR and a member of their racing group called 911. A Mediport employee responded to the emergency in a van and provided assistance with a handheld apparatus aimed at assisting with breathing while chest compressions continued. The second emergency medical technician and the paramedic arrived soon after in the second van. None of the individuals

responding on behalf of Mediport had access to a defibrillator. Chad Arnold was promptly loaded into the second Mediport van, and CPR continued while he was transported to a designated location where the local fire department took over his care. Despite these measures, Chad Arnold died shortly thereafter.

At all relevant times, Mediport was insured under a liability policy issued by Landmark. The policy provided medical professional liability (MPL) coverage. Its terms provided that Landmark would pay sums that the insured became obligated to pay as damages and associated claim expenses "arising out of a negligent act, error or omission . . . in the rendering of or failure to render professional services as described in the Business Description on the Declarations." The policy also advised the insured that its coverage limits would be eroded by the costs incurred to defend the insured against a claim -- including attorney fees.

Separately, the policy provided Commercial General Liability (CGL) coverage. This coverage was triggered by bodily injury caused by an "occurrence," defined as an "**accident**, including continuous or repeated exposure to substantially the same general harmful conditions." The coverage limits available pursuant to this provision were also subject to erosion by claims expenses.

Landmark's policy expressly provided that the MPL coverage and CGL coverage were mutually exclusive. There is no dispute that Mediport was aware of the policy's provisions -- including its eroding coverage limits.

Mediport was also insured under a compulsory automobile liability policy issued by Westfield. The policy comported with Kentucky's Motor Vehicle Reparations Act. It provided that Westfield would pay sums that the insured must pay as damages because of "bodily injury" or "property damage" to which this insurance applies, caused by an "accident" and resulting from the ownership, maintenance, or use of a covered auto.

In February 2014, Arnold filed a wrongful death action. Mediport was among the many named defendants. The complaint alleged that Mediport's agents or employees "failed to resuscitate and/or perform reasonable and proper emergency lifesaving medical treatment and/or protocols for at least ten (10) minutes"; "negligently rendered and/or failed to render medical treatment"; negligently failed "to have policies procedures, or standards regarding the response to medical emergencies"; "negligently instituted inadequate policies, procedures, or standards regarding the response to medical emergencies"; "were negligent by failing to train, instruct, and supervise [agents or employees] concerning the response to medical emergencies"; and "were negligent in responding to the decedent's medical emergency." The complaint alleged that their negligence was

the proximate cause of Chad Arnold's death. There was no allegation that Arnold sustained any injuries while being loaded, transported, or unloaded from the Mediport van.

Landmark undertook Mediport's defense under the MPL coverage provided by the policy. It did not consider the CGL coverage applicable under the circumstances. In October 2014, during discovery, Mediport provided to Arnold a copy of its Landmark policy. Although Arnold was made aware of the policy's eroding limits provision, Arnold did not make a formal demand for the Landmark policy limits for nearly a year during which the litigation continued. Finally, once Arnold made a demand, Landmark offered to tender the limits, minus the costs of Mediport's defense. Arnold rejected the offer, and litigation continued.

In November 2015, three individual defendants were added to Arnold's wrongful death action: Richard Covington, a paramedic and co-owner of Mediport; Steve Morris, a paramedic and co-owner of Mediport; and Dr. Timothy W. Carroll, Mediport's medical director. Landmark undertook the defense of Mediport's principals under the same terms of the policy.

In December 2015, Mediport disclosed the existence of its automobile policy with Westfield. After it was made aware of the claims asserted against Mediport, Westfield filed a complaint for declaratory judgment in the United States District Court for the Eastern District of Kentucky to seek a declaration that

the auto policy issued to Mediport did not provide coverage. Arnold filed a motion to dismiss, asking the federal court to exercise its discretion under the Declaratory Judgment Act to decline to exercise jurisdiction. Ultimately, the federal district court declined to exercise jurisdiction and dismissed Westfield's complaint, and thus the issues could be addressed in the pending state court action.

At a hearing conducted in early-February 2016, Arnold contended that if the Westfield policy had been disclosed on a timely basis, Westfield would have defended the claim and Landmark's coverage limits would not have been eroded by the costs of litigating the claim. Subsequently, on February 19, 2016, Arnold filed a motion to file a fourth amended complaint naming Mediport's *insurers* as defendants. The motion was granted.

In this complaint, Arnold sought a declaratory judgment regarding the nature and extent of Mediport's liability coverage under the Westfield and Landmark policies. The complaint also included a bad faith claim against Landmark and an allegation that Mediport and its agents were liable under a theory of "negligen[ce] per se by virtue of their independent and collective violations of Kentucky statutes and regulations, including the maintenance, use, and equipping of the vehicles involved in the event."

Westfield filed an answer to Arnold's fourth amended complaint and asserted a counterclaim and cross-claim for declaratory judgment regarding its

policy. Landmark filed its answer to the fourth amended complaint on June 24, 2016, specifically raising the issue of Arnold's standing to pursue a direct action against the insurer of an alleged tortfeasor.

On June 27, 2016, a settlement was reached in the wrongful death claim against Mediport and the individual defendants associated with Mediport. In an agreement filed under seal, Mediport agreed to entry of a final judgment against it for $1.00. Mediport, the individual defendants, and "all of [their] affiliates, directors, shareholders, officers, insurers, employees, representatives, attorneys, agents, independent contractors, successors and assigns" were released from all further claims and demands related to the wrongful death action.

An additional lump sum payment to settle the claims was funded by Landmark and Westfield. While any and all disputes between Arnold and Mediport and Arnold and the individual defendants were resolved, the terms of the settlement agreement provided, among other things, that "this Release shall not bar Arnold from pursuing the following four (4) claims:"

> Arnold may seek to obtain monetary sanctions against
> [law firm] under CR 11 or 37 as set forth in the Arnold's
> [*sic*] briefs filed with the Court on February 25, 2016 and
> March 21, 2016.
>
> . . . .
>
> Arnold may seek to obtain a ruling that the Westfield
> policy provides coverage for their claims in the Action.

> . . . .

> Arnold may seek to obtain a ruling that the Landmark policy does not contain eroding limits and/or the eroding limits are against Kentucky public policy.

> . . . .

> Arnold may pursue a bad faith claim against Landmark and/or RSUI, subject to all of its defenses and appeals.

If a court were to determine that the terms of the Westfield policy provided coverage, Westfield was to make a further lump sum payment to Arnold. If Arnold prevailed against Landmark, Landmark also agreed to pay to Arnold an additional sum certain equal to the costs of its insured's defense. (The agreed judgment and order of dismissal were entered in mid-August 2016. To recapitulate, Arnold was awarded a judgment against Mediport in the amount of $1.00, and the claims against Mediport and the individual defendants associated with Mediport were dismissed.)

On July 21, 2016, Westfield filed a motion for summary judgment. Westfield argued that its policy provided coverage only for "bodily injury" caused by an "accident" which results "from the ownership, maintenance, or use" of a covered vehicle and that this coverage was inapplicable under the circumstances. In the alternative, it argued that the policy excluded coverage for bodily injury "resulting from the providing or the failure to provide any medical or other professional services." It contended that Arnold's claims clearly involved the

failure to provide medical care or other professional services -- the specific subject matter of the exclusion.

In 2017, the parties filed extensive briefs in the trial court regarding the separate coverage issues. Arnold contended that Mediport's CGL coverage provision applied under the circumstances, not the MPL coverage, and that the CGL coverage limits had not been eroded by the costs of defending Mediport. Landmark argued that Arnold, a third-party claimant, was not in privity of contract with Landmark and that it otherwise lacked standing to dispute its decision to cover the loss under the MPL coverage as agreed by its insured. In the alternative, it contended that Mediport's CGL coverage had an unambiguous and enforceable eroding limits provision as well. It noted that the eroding limits provision is not uncommon in commercial policies and argued that because the insurance purchased by Mediport was not compulsory, the policy's provisions agreed upon by insured and insurer did not violate public policy.

In an order entered on May 21, 2018, the trial court concluded that the Westfield automobile policy did not provide coverage for Arnold's claims against Mediport. It concluded, in part, as follows:

> During the running of the race, Chad Arnold collapsed on the course, and subsequently died of cardiac arrest. The vehicle Mediport sent to respond to the emergency had no medical or emergency equipment and could only be used to transport Mr. Arnold and had no capacity to provide any life-saving services. The issue for this court

to decide is whether this failure of Mediport is covered by the terms of the insurance contract.

. . . .

The plain meaning of the language of this policy indicates that the insured is indemnified for injuries caused by an automobile accident and does not cover events not directly related to the operation of a motor vehicle.  There is no language concerning proper equipment or specialized services such as responding to a medical emergency.  The court cannot read additional coverage into an insurance contract.  The closest word would be Maintenance, but the clear context is the proper care of a motor vehicle to ensure that it is safe to operate, not that it have specialized equipment for a specialized service.  There is no evidence in this case that the policy buyer or seller had any intent to provide or purchase a policy that covered responses in a medical emergency with a properly equipped vehicle.  That type of policy would have very specific language concerning the equipment required.

Therefore, this Court rules that the insurance policy in this case does not provide coverage to Mediport concerning the operation of its vehicle at the scene of this tragic event.  To hold otherwise would require this court to expand the terms of the contract which it cannot legally do.

This order of May 21, 2018, as to Westfield was not made final and appealable.

On July 8, 2021, the trial court granted summary judgment to Landmark.  It concluded that because Arnold was not a party to the contract of insurance and had not been assigned Mediport's rights against Landmark in the settlement, Arnold lacked standing to pursue an action with respect to the coverage

-11-

issue. It observed that that "[a]n assignment of rights could have been easily obtained during the settlement with Mediport, however, that was not done." The court concluded there was no just cause for delay and made the order final and appealable.

By order entered on December 22, 2021, the court's order of May 21, 2018, in favor of Westfield was made final and appealable. Arnold's motion to alter, amend, or vacate the court's order of July 8, 2021, in favor of Landmark was denied. This appeal followed. Proceedings were stayed for a time so that the trial court could consider Arnold's motion filed pursuant to CR[1] 60.02. Once that motion was denied, the matter was ripe for our consideration.

Because the issue is paramount, we first address Arnold's argument that the circuit court erred by concluding that she lacked standing to seek a declaratory judgment concerning the eroding limits provisions of the liability policy issued to Mediport by Landmark. Arnold contends that she has standing to pursue a direct action against Mediport's insurer because an agreed judgment was entered against the insured, and the parties' settlement agreement provided that she could "seek to obtain a ruling that the Landmark policy does not contain eroding limits and/or eroding limits are against Kentucky public policy." We disagree.

---

[1] Kentucky Rules of Civil Procedure.

In its judgment, the circuit court considered its authority under the provisions of our declaratory judgment statute.  KRS[2] 418.045 provides a statutory action to "[a]ny person interested under a deed, will or other instrument of writing, or in a contract, written or parol . . . provided always that an actual controversy exists with respect thereto[.]"  The provisions of KRS 418.065 permit the trial court to "refuse to exercise the power to declare rights, duties, or other legal relations in any case . . . where the declaration or construction is not necessary or proper at the time under all the circumstances."

The circuit court observed that Arnold was not a party to the contract of insurance and had not been assigned any rights by the insured, Mediport.  Citing *Commonwealth v. Yamaha Motor Manufacturing*, 237 S.W.3d 203, 205 (Ky. 2007), the court concluded that as a stranger to the contract, Arnold could not pursue a declaration of rights because she lacked a judicially recognized interest in the subject matter of the action.  Nevertheless, the court proceeded to enter a judgment.

Section 109 of the Kentucky Constitution provides that the "judicial power of the Commonwealth shall be vested exclusively in one Court of Justice which shall be divided into a Supreme Court, a Court of Appeals, a trial court of general jurisdiction known as the Circuit Court and a trial court of limited

---

[2] Kentucky Revised Statutes.

jurisdiction known as the District Court." Section 112(5) of the Kentucky Constitution grants circuit courts "original jurisdiction of all *justiciable causes* not vested in some other court" and "such appellate jurisdiction as may be provided by law." (Emphasis added.)

In *Commonwealth Cabinet for Health and Family Services, Department for Medicaid Services v. Sexton by and through Appalachian Regional Healthcare, Inc.*, 566 S.W.3d 185 (Ky. 2018), the Supreme Court of Kentucky observed that the issue of constitutional standing is not subject to waiver. Consequently, in order to ensure that only justiciable causes are entertained in our Court, each court of the Commonwealth must consider the issue of constitutional standing -- even where a party opponent has failed to raise the issue.

In *Sexton*, the Kentucky Supreme Court adopted the federal standard for standing announced in *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992), holding that in order for a party to sue in Kentucky, the initiating party must have the requisite constitutional standing to do so as determined by three requirements: (1) injury, (2) causation, (3) redressability. The plaintiff must allege personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the relief requested. *Sexton*, 566 S.W.3d at 196. Because standing is a prerequisite to

invoking the jurisdiction of the circuit court, standing to sue must be determined **at the time the action is filed**. Its absence requires that the complaint be dismissed.

An injured party clearly has standing to sue a tortfeasor's insurance carrier and to maintain an action to collect a judgment in his/her favor against the named insured tortfeasor. *Willis v. Hamilton Mut. Ins. Co.*, 614 S.W.2d 251 (Ky. App. 1981). However, by filing her fourth amended complaint, Arnold was not attempting to collect a judgment in her favor against the alleged tortfeasor, who was Landmark's insured. She lacked standing to pursue a declaratory judgment action against Landmark -- both to determine whether the insurer could rely on the MLP coverage provision of its policy as a basis to pay the claim and whether its eroding limits provision was applicable or enforceable.

At the time that Arnold brought her declaratory judgment action against Landmark seeking relief concerning the terms of its policy, Arnold had not yet suffered an injury fairly traceable to Landmark's conduct or obligations. Arnold merely anticipated that a judgment could and would be entered against Mediport in her wrongful death action and that she could then rely upon the limits of Mediport's liability coverage to satisfy it. But, critically, at the time her action against Landmark was initiated, she had no judgment. Without it, she could not establish a financial interest in the proceeds of Mediport's insurance coverage sufficient to constitute a justiciable interest in the specific terms of the policy.

When a judgment was later entered against Mediport and the individual defendants, it was for a single dollar. There was no indication that the judgment was not -- or could not -- be satisfied by Mediport and the individual defendants who settled every claim against them in exchange for it. Arnold still lacked a justiciable interest in the coverage provided by Landmark. Even when a settlement was reached directly with Landmark, Landmark did not (nor could it) agree to waive its right to contend that Arnold lacked standing to file the declaratory judgment action in circuit court in the first place. Most importantly, Arnold was required to establish her standing to pursue the action to invoke and the jurisdiction of the circuit court at the time her action was filed.

Because Arnold lacked the requisite standing to pursue the action against Landmark at the time the fourth amended complaint was filed, she never properly invoked the jurisdiction of the circuit court. Because "the *justiciable cause* requirement applies to cases at all levels of judicial relief[,]" where the original jurisdiction of the circuit court was never properly invoked, this Court is constitutionally precluded from exercising appellate jurisdiction over the matter to decide the appeal on its merits. *Sexton*, 566 S.W.3d at 196-97. We do not reach the merits of Arnold's arguments with respect to Landmark because she lacks the constitutional standing necessary to invoke the exercise of our appellate

jurisdiction. Consequently, we are compelled to dismiss the appeal of the summary judgment entered in favor of Landmark.

We now consider the appeal of the summary judgment entered in favor of Westfield. Westfield does not challenge the jurisdiction of the circuit court. Because it filed a counterclaim in the action for declaratory judgment concerning its duty to defend its insured, Mediport, against Arnold's wrongful death action, we are persuaded that the jurisdiction of the circuit court was properly invoked.

CR 56.03 provides that summary judgment should be granted only where the evidence shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The propriety of summary judgment is a purely legal question involving no findings of fact. *Benton v. Boyd & Boyd, PLLC*, 387 S.W.3d 341 (Ky. App. 2012).

The following principles govern the interpretation of insurance contracts:

> Interpretation of insurance contracts is generally a matter of law to be decided by the court. As such, it is subject to de novo review on appeal. Under the reasonable expectation doctrine, ambiguous terms in an insurance contract must be interpreted in favor of the insured's reasonable expectations and construed as an average person would construe them. But "[o]nly actual ambiguities, not fanciful ones, will trigger application of the doctrine." Absent ambiguity, terms in an insurance contract are to be construed according to their "plain and

-17-

ordinary meaning." Insurance polices [*sic*] should be construed according to the parties' mutual understanding at the time they entered into the contract, with this mutual understanding to be deduced, if at all possible, from the language of the contract itself. Exceptions and exclusions in insurance policies are to be narrowly construed to effectuate insurance coverage. But "[r]easonable conditions, restrictions, and limitations on insurance coverage are not deemed *per se* to be contrary to public policy."

*Hugenberg v. West American Ins. Company/Ohio Cas. Group*, 249 S.W.3d 174, 185-86 (Ky. App. 2006) (citations omitted).

We first address Arnold's contention that the circuit court erred by concluding that no coverage was available under the provisions of Mediport's automobile liability policy. Again, the circuit court concluded that there was no coverage because the "plain meaning of the language of this policy indicates that the insured is indemnified for injuries **caused by an automobile accident** and does not cover events not directly related to the operation of a motor vehicle." (Emphasis added.) We conclude that the circuit court did not err in granting summary judgment in favor of Westfield.

As is typical, the commercial automobile policy issued to Mediport by Westfield provides: personal injury protection benefits, uninsured motorists benefits, underinsured motorists benefits, comprehensive physical damage coverage, and collision coverage. It provides liability coverage for its insured where the insured must pay damages because of bodily injury caused by an

-18-

accident "resulting from the ownership, maintenance, or use of a covered auto." A policy endorsement defines a number of exclusions to which the insurance does not apply, including bodily injury "resulting from the providing or failure to provide any medical or other professional services." The policy provides that Westfield has no duty to defend its insured in any action seeking damages for bodily injury to which the insurance does not apply.

In her brief, Arnold contends that Mediport was negligent in the "operation, use, ownership, and maintenance/*equipping* of the vehicles and Chad Arnold's transport." (Emphasis added.) She cites the inability of the first emergency medical technician to quickly open the rear door of the first van in order to access a backboard used to place Chad Arnold into the second van for transport. According to Arnold, the inability to open the rear door quickly meant that the EMT had to resort to the side door -- resulting in an allegedly significant delay in Chad's being transported to the ambulance. She argues that Mediport was negligent by: failing to include necessary life-saving equipment in its vans, including equipping the vehicle with a defibrillator and radios necessary for communication; failing to inspect the vans to ensure that they were in good working order; failing to respond properly to the incident; and by failing "to load/unload cargo" properly.

The complaint did not allege that Chad Arnold had been injured during any part of his being loaded, transported, or unloaded from Mediport's van. Arnold argues that none of the acts or omissions upon which the tort claims are based required medical or professional training or the provision of medical services. Thus, she contends that none was excluded from coverage pursuant to the terms of the policy.

In examining the provisions of the automobile liability policy, we must decide whether the claims asserted against Mediport are claims for bodily injury caused by an accident "resulting from the ownership, maintenance, or use of a covered auto." As did the trial court, we conclude that Chad Arnold's injuries were not caused by an accident of any kind "resulting from" the ownership, maintenance, or use of Mediport's vans. We also note that a similar phrase, "arising out of," has been construed expansively by the courts:

> The words "arising out of . . . use" in an automobile liability insurance policy, are broad, general and comprehensive terms meaning "originating from," or "having its origin in," "growing out of" or "flowing from" . . . . All that is required to come within the meaning of the words "arising out of the . . . use of the automobile" is a causal connection with the accident.

*Insurance Co. of North America v. Royal Indemnity Co.*, 429 F. 2d 1014, 1017-1018 (6th Cir. 1970)(citations omitted). *See also* 43 AM.JUR.2d *Insurance* § 708

(2005) stating that "'[a]rising out of' the use or occupancy of a motor vehicle requires a causal connection between the injuries and the vehicle."

We agree with the circuit court that Mediport's alleged failures (*i.e.*, to equip the van with sufficient life-saving equipment, to inspect the vans to ensure that they were in good working order, to respond properly to the incident, and to properly load/unload cargo) do not describe an accident resulting from the ownership, maintenance, or use of a vehicle as provided by the terms of the policy. Liability coverage for this alleged negligence is simply not contemplated -- nor is it encompassed -- by the plain language of the policy. There is no causal connection between Chad Arnold's injuries and the use or operation of the insured's vehicles. There is no evidence whatsoever indicating that an accident or injuries were caused by the driving of the vehicles to the scene, their presence at the scene, and/or the use of one to transport Chad Arnold to an ambulance.

On the contrary, Chad Arnold's injuries were wholly independent of the use, operation, and ownership of Mediport's vehicles. Because the bodily injuries suffered by Chad Arnold lack the necessary causal connection to the use of a motor vehicle as required by the clear language of the automobile liability policy, it provides no coverage. Consequently, we need not consider application of the exclusions described in the policy. The trial court did not err by granting summary judgment in favor of West American regarding the automobile policy.

Next, we address the issue of the duty to defend.  We note that the allegations of a complaint "cannot compel a defense if coverage does not exist." *Thompson v. West American Ins. Co.*, 839 S.W.2d 579, 581 (Ky. App. 1992) (quoting *Cincinnati Ins. Co. v. Vance*, 730 S.W.2d 521, 524 (Ky. 1987)).  The obligation to defend arises out of the insurance contract, not from the allegations of the complaint against the insured.  *Id.*  We conclude that Westfield had no duty to defend Mediport where there was no possibility of coverage under the circumstances.

Lastly, we address the motion of Mediport and the individual defendants (Timothy Carroll, Richard Covington, and Steve Morris) to be dismissed as parties to the appeal.  The motion was passed to this merits panel by order of the Court entered on January 13, 2023.  For purposes of appeal, a person is a necessary party if the person would be necessary for further proceedings in the circuit court if the judgment were reversed.  *Land v. Salem Bank*, 279 Ky. 449, 130 S.W.2d 818 (1939); *McBrearty v. Kentucky Community and Tech. College System*, 262 S.W.3d 205 (Ky. App. 2008).  Each and every claim against these parties included in the wrongful death action was dismissed as settled, and a judgment was entered against them.  None of the issues presented on appeal concerns their liability, and they would not have been necessary parties if we had reversed the

-22-

judgment of the circuit court. Consequently, they are not necessary parties to these proceedings. Their motion is hereby granted.

To recapitulate, the appeal of the judgment in favor of Landmark is dismissed; the judgment in favor of Westfield is affirmed; and Mediport and the individual defendants are dismissed as parties to the appeal. We shall issue a separate order granting the motion of Mediport and these individuals to dismiss them as parties.

ALL CONCUR.

BRIEFS FOR APPELLANTS:

A. Neal Herrington
Christopher H. Morris
Louisville, Kentucky

BRIEF FOR APPELLEES TIMOTHY
CARROLL, MEDIPORT, LLC.,
RICHARD COVINGTON, AND
STEVE MORRIS:

D. Christopher Robinson
Griffin Terry Sumner
Louisville, Kentucky

Anthony J. Caruso
Cincinnati, Ohio

BRIEF FOR APPELLEE
WESTFIELD INSURANCE
COMPANY:

John W. Walters
Lexington, Kentucky

Elizabeth M. Bass
Hendersonville, Tennessee

BRIEF FOR APPELLEES
LANDMARK AMERICAN
INSURANCE COMPANY AND
RSUI INDEMNITY COMPANY:

Mindy G. Barfield
Kyle R. Bunnell
Lexington, Kentucky